UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IAN SCHLEIFER,

                Plaintiff,

        -against-

KITTEE BERNS,

                Defendant.

**MEMORANDUM**
**DECISION AND ORDER**

17 Civ. 1649 (BMC)

**COGAN**, District Judge.

    Plaintiff brings this copyright infringement action alleging that defendant's Ethiopian cookbook violates the copyright that plaintiff has on his own previously published Ethiopian cookbook. Before me is defendant's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as her motion for attorney's fees and sanctions. For the reasons that follow, defendant's motion to dismiss is granted. Moreover, because plaintiff's complaint has no legal or factual basis, defendant's motions for attorney's fees under the Copyright Act and for sanctions against plaintiff's attorneys are granted.

## BACKGROUND

    Plaintiff Ian Schleifer published his Ethiopian cookbook, <u>Ethiopian-Inspired Cooking: Vegetarian Specialties</u>, in May 2007 under the pen name "Ian Finn" (the "2007 Schleifer Cookbook"). The 2007 Schleifer Work included 17 pages of written content, including 11 recipes, and three pages of photographs, for a total of 20 pages. The 2007 Schleifer Work's thirteen-digit international standard book number ("ISBN-13") is 9780979627101. It appears that there are two versions of the cookbook bearing this ISBN-13. The second version is being sold on Amazon (the "2007 Amazon Schleifer Cookbook"), and it indicates that it was published in 2007. However, this may not be accurate because the 2007 Amazon Schleifer Cookbook

references a cookbook plaintiff published in September 2008, so it appears that the 2007 Amazon Schleifer Cookbook was published after that date.  Moreover, the 2007 Amazon Schleifer Cookbook is almost twice as long:  The 2007 Amazon Schleifer Cookbook is 46 pages, including 11 recipes, as compared to the original 2007 Schleifer Cookbook, which is 20 pages, including 11 recipes.

Defendant published her cookbook, <u>Teff Love:  Adventures in Vegan Ethiopian Cooking</u>, on January 15, 2015, under the pen name "Kittee Berns" (the "Berns Cookbook").  The Berns Cookbook contains more than 185 pages, including over 140 recipes, commentary, instructions, ingredient descriptions, and shopping guides.  The Berns Work also includes black-and-white, color, and monochrome illustrations.

In July 2016, plaintiff published a second edition of his 2007 Schleifer Cookbook (the "2016 Schleifer Cookbook").  The second edition bears the same name as the 2007 Schleifer Cookbook and is itself identified as the "2nd Edition" of the 2007 Schleifer Cookbook.  The ISBN-13 is different for the 2016 Schleifer Cookbook, as well:  ISBN-13 9781535215299.  The 2016 Schleifer Cookbook includes 82 pages of content, including 12 recipes and several black-and-white photographs.  Moreover, in terms of finish, the 2016 Schleifer Cookbook looks more professionally composed, whereas the 2007 Schleifer Cookbook seems more amateur in comparison, as it appears to have been composed with a word processing program and bound with a plastic spiral.

The 2007 Schleifer Cookbook bears the Registration Number TX 8-281-274.  However, a search of the U.S. Copyright Office's public search record – which the Court can consider because it is both an exhibit to the amended complaint and an integral element on which plaintiff's claim rests – indicates that plaintiff registered the 2007 Schleifer Cookbook at TX 8-

281-274 on December 28, 2016. On January 30, 2017, plaintiff supplemented his Registration and registered the 2016 Schleifer Cookbook at TX 6-250-394.

Notwithstanding the differences in pages and number of recipes, plaintiff alleges that "there are no substantive differences between" the 2007 Schleifer Cookbook and the 2016 Schleifer Cookbook, and that "[a]ll infringements and copied texts can be found in both the 2007 and 2016 edition of the books." Plaintiff argues that both the 2007 and 2016 Cookbooks "are identical in content notwithstanding certain grammatical upgrades, a preface, and the addition of colored photos." Moreover, plaintiff alleges that, based on defendant's responses to interview questions in which she stated that she read a lot of recipes and books as part of her effort to write her own cookbook, one can infer that defendant was familiar with plaintiff's cookbook.

## DISCUSSION

### I. Motion to Dismiss Copyright Infringment

#### A. *Standard of Review*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). A court is not, however, "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." Id. Thus, "threadbare recitals of the elements of a cause of action[,] supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Determining whether a complaint plausibly states a claim for relief is "a

context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

"In addition to the text of the complaint, the Court may consider documents attached as exhibits, incorporated by reference, or that are 'integral' to the complaint." McDonald v. West, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015) (citing DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)). In a copyright infringement action, "the works themselves supersede and control [any] contrary descriptions" that the parties offer in the pleadings. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010).

### B. *Copyright Infringement*

To state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). "In the absence of direct evidence, copying is proven by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (internal quotation marks omitted); see also Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986) ("[c]opying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works.").

Not all copying constitutes copyright infringement, and as the Second Circuit has repeatedly stated, "[i]t is an axiom of copyright law that the protection granted a copyrightable work extends only to the particular expression of an idea and never to the idea itself." Reyher v. Children's Television Workshop, 533 F.2d 87, 90 (2d Cir. 1976). Furthermore, "[s]imply because a work is copyrighted does not mean every element of that work is protected." Boisson

4

v. Banian, Ltd, 273 F.3d 262, 268 (2d Cir. 2001). Therefore, dismissal is appropriate where the similarity concerns only non-copyrightable elements of plaintiff's work or if no reasonable factfinder could find the works substantially similar.

District courts may evaluate substantial similarity at the pleadings stage on a motion to dismiss. See Peter F. Gaito Architecture, 602 F.3d at 64 (In ruling on a motion to dismiss, "no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." (internal quotation marks omitted)); Effie Film, LLC v. Pomerance, 909 F. Supp. 2d 273, 290-91 (S.D.N.Y. 2012) ("Although substantial similarity analysis often presents questions of fact, where the court has before it all that is necessary to make a comparison of the works in question, it may rule on substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss." (internal quotation marks omitted)).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001) (alteration in original and internal quotation marks omitted). However, "a more refined analysis is required where [the allegedly copied] work is not wholly original, but rather incorporates elements from the public domain," in which case a court must look for "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work]." Boisson, 273 F.3d at 272 (internal quotation marks omitted). The Second Circuit has called this latter test the "more discerning" test, and in applying it, the Circuit has cautioned courts "not to dissect the works at issue into separate components and compare only the copyrightable elements," but rather to be "guided by comparing the total concept and feel of the contested works." Id. (internal quotation marks omitted).

5

More specifically, a court must "examine the similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting of the" works, while "tak[ing] care to inquire only whether the *protectible elements, standing alone*, are substantially similar." Williams, 84 F.3d at 588 (internal quotation marks omitted). "[T]he total-concept-and-feel locution functions as a reminder that, while the infringement analysis must begin by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original, infringement analysis is not simply a matter of ascertaining similarity between components viewed in isolation." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134 (2d Cir. 2003).

Although there is an issue as to when plaintiff secured his copyright registration (as it appears that his copyright postdates the publication of the Berns Cookbook), even if the Court accepts that he had a valid copyright in 2007, plaintiff has failed to establish substantial similarities between the 2007 Schleifer Cookbook and the Berns Cookbook. The below table compares the infringing material that plaintiff identifies in his Amended Complaint and the corresponding content in the Berns Cookbook (in blue italics).[1]

---

[1] In plaintiff's original complaint, he included ten instances of infringement, but five of them were actually comparisons from the 2016 Schleifer Cookbook. Because the Berns Cookbook was published before the 2016 Schleifer Cookbook, plaintiff deleted those allegations from his amended complaint. However, he did not do a complete job – one of the remaining examples he includes in the amended complaint actually appears nowhere in either the 2007 Schleifer Cookbook or the 2007 Amazon Schleifer Cookbook. Thus, this table only includes the allegations in the amended complaint with some actual 2007 Cookbook bases.

6

| **Alleged Infringements from the Schleifer Cookbooks** | **Berns Cookbook** |
|---|---|
| "Using our *spongy, crepe-like injera bread*. . . *soaked* through with the flavors and colors of the *food*." <br><br> 2007 Schleifer Cookbook at 3; 2007 Amazon Schleifer Cookbook at 6; 2016 Schleifer Cookbook at 7. | "*Injera*, a *spongy*, tangy . . . *crepe-like bread*, that *soaks* up the yummy sauces from the *food* that rests upon it." <br><br> Berns Cookbook at 1. |
| "*Tibs*. . .this is a vegetarian spin on a popular *meat* dish. . . . Tibs is similar to a saute, *stir-fry*, or sizzle." <br><br> 2007 Amazon Schleifer Cookbook at 20; 2016 Schleifer Cookbook at 33. | "*[T]ibs* are traditionally *meat*-filled *stir-fry* dishes." <br><br><br><br> Berns Cookbook at 153. |
| "*Berbere*, a complex *spice blend* found in the *hotter* traditional Ethiopian dishes…." <br><br> 2007 Schleifer Cookbook at 7; 2007 Amazon Schleifer Cookbook at 1. | "*[B]erbere* is a *spice blend* made from moderately *hot* red peppers and a slew of other spices." <br><br> Berns Cookbook at 21. |
| "It is *traditional* for an *Ethiopian* hostess to roll up some of the meal in a piece of *Injera* and place the first bite in the guest's *mouth*." <br><br> 2007 Schleifer Cookbook at 16; 2007 Amazon Schleifer Cookbook at 10; 2016 Schleifer Cookbook at 15. | "*Ethiopian tradition* of wrapping. . .foods in *injera* and popping it into the *mouths* of special friends." <br><br> Berns Cookbook at 178. |

These few common words provide no basis for a copyright infringement claim. First, the factual content describing particular Ethiopian foods, ingredients, or culinary traditions is not protectable as a matter of law. See 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); Sparaco v. Lawler, Matusky, Skelly, Engineers LLP, 303 F.3d 460, 466 (2d Cir. 2002) (noting that "historical, scientific, or factual information belongs in the public domain").

7

To the extent the two works have general similarities – including the fact that both are about vegetarian or vegan Ethiopian cuisine, the inclusion of illustrations of prepared dishes, and descriptions of foods as spicy, spongy, or the like – these elements simply do not amount to a claim for copyright violation. Instead, they are "*scènes à faire*," or "unprotectible elements that follow naturally from [the] work's theme rather than from [the] author's creativity." MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 194 (2d Cir. 2004).

Plaintiff's alleged similarities, with respect to the individual elements outlined above, are insufficient to sustain his contention that the cookbooks are substantially similar within the meaning of copyright law. Just as the court found in LaPine v. Seinfeld, No. 08 CIV. 128, 2009 WL 2902584, at *9 (S.D.N.Y. Sept. 10, 2009), aff'd, 375 F. App'x 81 (2d Cir. 2010), "[t]he similarities identified by Plaintiffs are the result of the similar medium of expression used (cookbooks) or of the similar subject matter that both cookbooks address [Ethiopian food]. Stock elements resulting from the initial choice of subject matter are not protectible." The Seinfeld court further observed that "when a cookbook is based on a particular idea or theme (whether it be vegetarian cooking, grilling, or desserts), the individual recipes in that book are certain to share that common theme and will likely share certain similarities with recipes in other cookbooks based on the same idea." Id.

Moreover, even the most belabored analysis of plaintiff's allegations shows that his complaint rests on scattered words and short phrases, neither of which are protectable. See McDonald v. West, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), aff'd, 669 F. App'x 59 (2d Cir. 2016) ("Words and short phrases . . . rarely if ever exhibit sufficient originality to warrant copyright protection"). I thus reject plaintiff's argument that his content is "original expression to engage the mind as to the flavors, textures, methods, and practice of the art of Ethiopian

8

cuisine." His cookbook is no such thing. His attempt to claim infringement based on scattered phrases necessary to explain the common theme of vegetarian or vegan Ethiopian cuisine fails.

As to plaintiff's generic assertion of substantial similarities, "numerous differences tend to undercut substantial similarity." Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905, 913 (2d Cir. 1980); see also id. ("As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other."). Although the "compilation of non-protectible facts is copyrightable if it features an original selection or arrangement of facts, so that the selection or arrangement possesses at least some minimal degree of creativity," that is not the case here. MyWebGrocer, 375 F.3d at 193 (internal quotation marks and citation omitted). Even if the Court were to consider the longer 2007 Amazon Schleifer Cookbook in conducting its comparison, the 2007 Amazon Schleifer Cookbook and Berns Cookbook are substantially dissimilar. The Berns Cookbook contains more than 185 pages of content, including cultural history, ingredients lists, shopping lists, over 140 recipes, and over two-dozen pages of photographs and illustrations. In contrast, the 2007 Amazon Schleifer Cookbook contains only 46 numbered pages, including 12 recipes, six pages of commentary, a three-page interview, and nine pages of black-and-white photographs. The "total concept and feel" of these two works is distinct, and the abstract similarities that "follow naturally" from the works' common theme of vegetarian Ethiopian cooking are not protectable. Lapine v. Seinfeld, 375 F. App'x 81, 83 (2d Cir. 2010). Indeed, the 2007 Amazon Schleifer "Cookbook" is hardly even a book; it is closer to a pamphlet.

Having considered the cookbooks at issue, both the alleged similarities and the total concept and feel, neither the total look and feel of the two works, nor the points of similarity

identified by plaintiff, are sufficient, as a matter of law, to support a finding of copyright infringement. Put differently, no reasonable factfinder could conclude that an ordinary lay observer would be disposed to overlook the disparities between the works and find them, in their specifics or in their totality, to have the same aesthetic appeal. See Boisson, 273 F.3d at 272.[2]

## II. The Assessment of Attorney's Fees & Costs Against Plaintiff and His Counsel Under the Copyright Act & Pursuant to the Court's Inherent Authority

### A. Legal Standard

Under the Copyright Act, a "court in its discretion may allow the recovery of full costs . . . [and] also award a reasonable attorney's fee to the prevailing party" in a civil action for copyright infringement. 17 U.S.C. § 505. Important here is that costs and attorney's fees are equally available to either a prevailing plaintiff or prevailing defendant. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). An award of attorney's fees and costs is not automatic; rather, the district court has the sole and broad discretion to determine whether such assessment would be fair. See Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1011 (2d Cir. 1995). "When determining whether to award attorney's fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant v. Media Right Productions, Inc., 603 F.3d 135, 144 (2d Cir. 2010). "The third factor – objective unreasonableness – should be given substantial weight." Id.

---

[2] The Court need not consider plaintiff's claim for unjust enrichment, as it is well-settled that a claim for unjust enrichment is preempted by the Copyright Act. See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305, 306-07 (2d Cir. 2004); Affiliated Records Inc. v. Taylor, 09 Civ. 9938, 2012 WL 1675589, at *5 (S.D.N.Y. May 14, 2012).

Additionally, as the Supreme Court recently noted, § 505 costs and fees should be awarded in such a way that "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1986 (2016). Accordingly, the Court should "giv[e] substantial weight to the reasonableness of a losing party's position." Id. at 1983.

The Court also has the inherent power to impose monetary sanctions on a litigant or his counsel, including the assessment of attorney's fees and costs. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991). Under this inherent power, "a court may assess attorney's fees when a party [or lawyer] has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. at 45-46 (internal citation omitted).

### B. Discussion

Here, an award of costs and fees under the Copyright Act is warranted because the factual and legal contentions plaintiff argued were either frivolous or objectively unreasonable, and there is a need in this case for both compensation and deterrence. First, the unreasonable nature of plaintiff's claims in this case is manifest. It was objectively unreasonable for plaintiff to have believed that a colorable copyright action exists based on four examples of similar language in what amounts to non-protectable factual descriptions of Ethiopian cuisine and culinary traditions. The unreasonableness of plaintiff's position is supported by the fact that plaintiff's opposition to the motion to dismiss contains a mere three-and-one-half pages arguing that his copyright claim was actionable. The vast majority of those pages is the plain recitation of the legal standards, which is to say that plaintiff could not point to any cases that would support his action because there are none. Put differently, plaintiff's position was so far afield that his attorneys could not even defend against the motion to dismiss.

This objective unreasonableness is compounded by the unreasonable manner in which this case has been litigated, from plaintiff's failure to properly investigate defendant's publisher's letter explaining why his claim lacked merit and the legal arguments, to his infringement allegations regarding content not actually contained in the 2007 Schleifer Cookbook, but rather contained in the 2016 Schleifer Cookbook, to the inclusion of unsupported infringement allegations in the amended complaint that nowhere appear in the 2007 Schleifer Cookbook, to the bald assertion that the 20-page (or 46-page) 2007 Schleifer Cookbook is "identical" to the 82-page 2016 Schleifer Cookbook. These allegations greatly exceed the bounds of fair argument.

Plaintiff argues that he "wholeheartedly believes this lawsuit has merit and is not made in bad faith," but even if true, that is immaterial. The standard is "objective reasonableness," not subjective reasonableness. More fundamentally, a lay person's wholehearted beliefs do not save him or his attorneys from having to pay fees; it was incumbent on his attorneys to explain that his copyright action was frivolous, and their failure to do that (and several other failings) leads into why the Court will exercise its inherent authority to sanction plaintiff's lawyers for attorney's fees and costs.

No reasonable copyright attorney, or even an attorney who had devoted 20 minutes to legal research, would have filed this complaint. If plaintiff's attorneys did not do the requisite research when filing the complaint, surely they should have recognized the absence of merit when preparing the opposition to the motion to dismiss. Despite seeing no supporting case law, plaintiff's attorneys forged onward.

Worse than that, I cannot comprehend how plaintiff sought statutory damages when he had no copyright registration at the time that defendant published her book. It is axiomatic that

statutory damages are only permitted when a plaintiff has a valid registration at the time of infringement, Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 363 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007), and here, plaintiff did not register his 2007 cookbook until eight months ago. Such steadfast adherence to an untenable legal position and the submission of false allegations and far-fetched arguments to this Court rise to a level of bad faith that compels the imposition of attorney's fees on both plaintiff and his attorneys.

Here, the award of costs and fees to defendant furthers the goals that the Supreme Court and courts in this Circuit have repeatedly emphasized in copyright cases, *i.e.*, compensation and deterrence. When plaintiff filed this frivolous action, defendant had no choice but to engage counsel and expend resources to litigate this case. Under these circumstances, the policies behind the Copyright Act would be violated if this Court required defendant to bear her own costs and fees. See Fogerty, 510 U.S. at 529 ("It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent . . . ." (internal quotation marks omitted)).

As to deterrence, an award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing frivolous and objectively unreasonable claims. There is also a need to deter attorneys who fail to comply with their obligations to the Court to research and put forth good-faith claims and defenses. Therefore, the Court concludes, in the exercise of its discretion, that an award of costs and attorney's fees to defendant would serve the purposes of the Copyright Act, and that such an award is necessary here.

The same reasons animate the Court's assessment of sanctions on plaintiff's attorneys. Their conduct in this case can only be described as bad faith. Plaintiff's attorneys failed to perform a pre-litigation investigation and then failed to withdraw the claims when, on drafting

the opposition to the motion to dismiss, they found no cases supporting their positions. Not only could they not affirmatively support their case, but they could not even address the majority of defendant's substantive arguments. Plaintiff's attorneys seemed to have taken the position that they were going to roll the dice even though nothing in law or fact supported their filing or prosecuting this suit.

Given the foregoing, it is appropriate that both plaintiff and his attorneys be jointly and severally liable for the costs and fees, which the Court will assess after submission of billing records by defendant.

Accordingly, defendant is ORDERED to submit, within 14 days of the date of this Memorandum Decision and Order, her itemization of costs and her contemporaneous time and billing records for defending this action. Plaintiff has 14 days from the filing of those records to oppose the reasonableness of the amount of defendant's fees and costs, and defendant has seven days thereafter to reply.

The Court need not reach defendant's argument regarding additional statutory sanctions. The shifting of costs and attorney's fees to plaintiff and his attorneys is sufficient to effect both specific and general deterrence and compensate plaintiff for having to defend this action.

## CONCLUSION

Defendant's motion to dismiss and for attorney's fees and costs is granted.

**SO ORDERED.**

_____
U.S.D.J.

Dated:  Brooklyn, New York
        July 19, 2017